The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLY STONELAKE, an individual,

     Plaintiff,

v.

META Platforms, Inc. a Delaware Corporation,

     Defendant.

Case No. 2:25-cv-474-BJR

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Kelly Stonelake brings this employment discrimination action against her former employer, Meta Platforms, Inc. ("Meta"). Compl., Dkt. No. 1-1. Before the Court is Meta's Motion to Dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 11. Having fully considered the materials and the relevant legal authorities, the Court grants in part and denies in part Meta's Motion to Dismiss. The reasoning for the Court's decision follows.

## II. BACKGROUND

In 2009, Stonelake started working for Meta in Palo Alto, California as a marketing specialist. Compl. ¶¶ 5, 8. Assuming facts in favor of Plaintiff on this Motion to Dismiss, Stonelake

began witnessing rampant discrimination against female Meta employees at that time. *Id.* ¶ 9. Stonelake also personally experienced sex-based discrimination. *Id.* ¶¶ 10-21. For example, Stonelake alleges that she was sexually assaulted by a male supervisor who told her that she would not be promoted unless she had sex with him. *Id.* ¶¶ 18-19. Stonelake further alleges that her male colleagues made frequent jokes about her having a consensual sexual relationship with that same supervisor. *Id.* ¶ 21.

To escape her supervisor's harassment, Stonelake transferred to Meta's Seattle office. *Id.* ¶ 23. In 2016, she was assigned a new supervisor, "ES," who she claims regularly made sexist comments and held Stonelake to a higher standard than her male colleagues. *Id.* ¶¶ 30-31, 36, 37, 50, 52. For example, Stonelake alleges that ES required Stonelake to write her own directorship promotion case and portfolio—a process that was supposed to be the supervisor's responsibility— but did not make Stonelake's male colleague do the same. *Id.* ¶ 37. Stonelake further alleges that she reported ES's sexist comments and conduct multiple times to colleagues, including managers, but received no support. *Id.* ¶¶ 32, 51-54, 56.

Around September 2020, Stonelake accepted a new role at Meta and reported to a new supervisor, Brett Vogel. *Id.* ¶¶ 55-57. At that time, Meta had become subject to a Federal Trade Commission ("FTC") consent order that mandated a "Data Protection Assessment" to evaluate Meta's data privacy controls. *Id.* ¶¶ 63, 65. The initial Data Protection Assessment was launched in 2021. *Id.* ¶¶ 64-66. The rollout of the Assessment (which Stonelake was not involved in) resulted in significant business disruption at Meta. *Id.* ¶ 66. Stonelake was assigned a leading role in helping to resolve the assessment's adverse impacts on Meta. *Id.* ¶¶ 67-71. She alleges that, despite receiving praise for this work in a 2021 performance review, she was not promoted the following quarter. *Id.* ¶¶ 72-74.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 2

Stonelake further alleges that, by February 2022, she went on to lead efforts to minimize the adverse business impacts of a second Data Protection Assessment on Meta. *Id.* ¶¶ 79, 81. According to Stonelake, the project was a "landslide success." *Id.* ¶ 82. Around early 2022, she was asked to lead a twenty-person Horizon[1] marketing team while that team's director was on leave. *Id.* ¶ 87. As part of this interim role, she was invited to participate in Horizon leadership team meetings. *Id.* ¶ 100. However, according to Stonelake, after she raised concerns about product safety at meetings, which included an otherwise all-male leadership team, she stopped receiving invitations to attend the meetings. *Id.* ¶¶ 100-03. Around this time, Stonelake also claims that she discovered that Horizon product leaders were attempting to reassign individuals responsible for executing the Data Protection Assessment to other projects, even though doing so put the company at risk of incurring FTC fines. *Id.* ¶ 111.

Stonelake alleges that, in January 2023, she was asked to serve as a "bias interrupter" during performance review meetings. *Id.* ¶ 112. According to Stonelake, she was told that the role of bias interrupter "include[d] asking difficult questions, probing to better understand the rationale for proposed decisions, ensuring decisions are being made based on objective evidence and behaviors, and providing those in the room an opportunity to speak." *Id.* Stonelake further claims that, after accepting the bias interrupter role, she called out multiple incidents of bias during performance review meetings, but her concerns were brushed off by colleagues and human resources ("HR"). *Id.* ¶¶ 116-18, 121-22.

---

[1] Horizon is Meta's virtual reality operating system. Compl. ¶ 88.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 3

After Stonelake's experience serving as a bias interrupter, she was informed that she would not be receiving a promotion. *Id.* ¶ 125. Stonelake went on emergency medical leave. *Id.* ¶ 129. She was laid off from Meta effective January 8, 2024. *Id.* ¶ 132.

On February 3, 2025, Stonelake initiated this action in state court, alleging that Meta engaged in sex-based discrimination, harassment, and retaliation in violation of state law. *See id.* ¶¶ 140-54. Meta removed the action to this Court. Ntc. of Removal, Dkt. No. 1. Meta now moves to dismiss the Complaint for failure to state a claim. Def.'s Mot.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss in the employment discrimination context, the plaintiff must state a plausible claim for relief that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 4

1

## IV.    DISCUSSION

Stonelake brings claims for sex-based disparate treatment (failure to promote), sexual harassment, and retaliation pursuant to the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.010 *et seq.* Stonelake also alleges claims for wrongful discharge in violation of public policy, and retaliation pursuant to Washington State's Silenced No More Act ("SNMA")," RCW § 49.44.211. Meta moves to dismiss all claims. Def.'s Mot. The Court addresses each claim in turn.

### A.  Stonelake Has Sufficiently Stated a Claim for Failure to Promote

WLAD prohibits employers from discriminating "against any person in compensation or in other terms or conditions of employment" on the basis of a protected characteristic, including gender. RCW § 49.60.180. Available claims under WLAD include disparate treatment and harassment. *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 743, 749 (2013).

Stonelake argues that Meta engaged in sex-based disparate treatment when it failed to promote her in 2022 and 2023. Pl.'s Resp. at 14-18, Dkt. No. 14. Meta argues that Stonelake's failure-to-promote claim should be dismissed as time-barred by the three-year statute of limitations and because Stonelake has not alleged sufficient facts to state a claim. Def.'s Mot. at 5-7.

### 1.  The Failure-to-Promote Claim is Timely

Meta argues that Stonelake has not established that her alleged failures to promote occurred after the three-year statute of limitations period commenced on February 3, 2022. *Id.* at 6. Stonelake responds that her Complaint does not conclusively show that the promotions that she expected occurred outside of the limitations period, which is sufficient to establish timeliness at this stage. Pl.'s Resp. at 15-16.

This Court may dismiss a claim on statute of limitations grounds only if, accepting all well-pled facts in the complaint as true, "'it appears beyond doubt that the plaintiff can prove no

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

set of facts that would establish the timeliness of the claim.'" *U.S. v. Page*, 116 F.4th 822, 826 (9th Cir. 2024) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)).

As to the 2022 failure-to-promote claim, Stonelake alleges the following:

- After not receiving a promotion in the first quarter of 2022, she organized a team of leaders to work toward goals related to a second Data Privacy Assessment by February 2022. Compl. ¶¶ 79, 81.

- Despite her successful project leadership, "[f]rom September 2021 through December 2022," she was passed over for promotion. *Id.* ¶¶ 83-84.

Although these allegations are ambiguous as to the exact timing of the 2022 failure to promote, the Court cannot say that there is no set of facts that would establish that the 2022 failure to promote occurred on or after February 3, 2022, when the limitations period commenced.

As to the timeliness of the 2023 failure to promote, it is apparent from the Complaint that Stonelake was informed that she would not be receiving a promotion after January 2023. *See id.* ¶¶ 112, 123, 125-26. The 2023 failure to promote occurred within the limitations period. Stonelake's failure-to-promote claim is timely.

### 2. The Allegations Regarding the 2022 and 2023 Failures to Promote Are Otherwise Sufficient to State a Claim

Meta further argues that, even if Stonelake's failure-to-promote claim is timely, it should still be dismissed because "there is nothing supporting that Meta failed to promote Stonelake because of her gender." Def.'s Mot. at 7. To prevail on a sex-based disparate treatment claim under WLAD in the failure-to-promote context, Stonelake must show that (1) she is a woman, (2) she was qualified for an available promotion, (3) she was not offered the position, and (4) the promotion went to a male. *Fulton v. State, Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 156 (2012); *Barker v. Adv. Silicon Materials, LLC, (ASIMI)*, 131 Wn. App. 616, 623-24 (2006). Applying this

framework, Stonelake's allegations regarding the 2022 and 2023 failures to promote are sufficient at this stage.

Regarding the 2022 failure to promote, Stonelake alleges that:

- She took a leading role in preserving millions in sales revenue and resolving various compliance issues as part of the initial FTC Data Protection Assessment. Compl. ¶¶ 63-70.

- She was praised for this work in her 2021 end-of-year performance review. *Id.* ¶ 72.

- She had discussed the possibility of a promotion with her supervisor multiple times. *Id.* ¶ 73.

- While Stonelake ultimately received no promotion for her work on the Data Protection Assessment, her male coworkers, including twenty percent of her team, received promotions based on the team's exceptional performance. *Id.* ¶ 74.

- Stonelake successfully led her team through the second Data Protection Assessment but again received no promotion. *Id.* ¶¶ 79, 81-84.

- Over the course of that Assessment, Stonelake's male boss, his male peers, and his eligible supervisees who were most involved with the project all received promotions. *Id.* ¶ 85.

These allegations are sufficient at this stage to state a claim for failure to promote.

Regarding the 2023 failure to promote, Stonelake alleges that her supervisor told her that he would not be putting her forward for a promotion because documenting her accomplishments would expose the failures of male leaders. *Id.* ¶¶ 125-26. Meta argues that Stonelake's admission that she was on medical leave starting in January 2023 undermines her disparate treatment claim based on the 2023 failure to promote because "she cannot plausibly claim discrimination for a promotion that she was not in a position to receive due to her absence." Def.'s Mot. at 7. However, it is unclear from the Complaint when Stonelake went on medical leave. *See* Compl. at 3 (providing

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 7

that Stonelake took emergency medical leave in February 2023), ¶¶ 129, ("In February 2023, she went on emergency mental health leave . . . ."), 137 ("Stonelake went on medical leave in January 2023 . . . ."). Drawing all reasonable inferences in favor of Stonelake, the allegations concerning the 2023 failure to promote are sufficient to state a claim. Stonelake's failure-to-promote claim survives the Motion to Dismiss.

### B. Stonelake Has Sufficiently Stated a Claim for Sexual Harassment Based on Acts that Occurred During Her Tenure at Meta's Seattle Office

Stonelake alleges a claim for sexual harassment (also referred to as a "hostile work environment" claim) based on discriminatory conduct and comments she experienced throughout her tenure at Meta. Pl.'s Resp. at 8-11. Meta argues that Stonelake's harassment claim is untimely because she makes no allegations of severe or pervasive conduct that occurred after 2020. Def.'s Mot. at 2-3. Stonelake responds that Meta is incorrect that acts within the statute of limitations must, standing alone, be severe and pervasive. Pl.'s Resp. at 12. Citing to *Nat'l R.R. Passenger Corp. v. Morgan* 536 U.S. 101, 115 (2002), Stonelake asserts that she need only show that one of the acts contributing to the harassment claim occurred within the limitations period. *Id.*

To establish a claim for sexual harassment, the plaintiff must show that she was subjected to verbal or physical conduct of a sexual nature, that was unwelcome, and that was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013). In analyzing whether the alleged conduct created a hostile work environment, courts assess the totality of the circumstances. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

In *Morgan*, the United States Supreme Court recognized that harassment claims "are different in kind from discrete acts [of discrimination]" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Accordingly, the *Morgan* Court held that acts contributing to harassment claims that occur outside of the statutory period may be considered, provided that (1) an act contributing to the claim occurs within the statute of limitations, (2) the acts have some relationship to each other, and (3) no intervening events break the causal nexus between the within-statute and out-of-time acts. *Id.* at 117-18; *see also Antonius v. King Cnty.*, 153 Wn.2d 256, 270 (2004) (holding that the *Morgan* framework applies to claims for harassment brought pursuant to WLAD); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258-59 (11th Cir. 2003) (holding that intervening action by employer rendered coworker's conduct no longer part of the plaintiff's hostile work environment claim). Applying this framework, Stonelake's sexual harassment claim survives in part.

### 1. Stonelake Has Adequately Alleged Acts that Fall Within the Statute of Limitations

Regarding the first *Morgan* requirement, that an act contributing to the claim occurred within the statute of limitations, Stonelake cites to allegations from her Complaint that she claims took place within the limitations period. Pl.'s Resp. at 10, 12. Notably, Stonelake cites to her allegations that:

- In 2022, when she was not promoted, her supervisor told her that someone had to "take the fall" for the disastrous rollout of the first Data Protection Assessment, even though Stonelake had no involvement in the rollout of that project. (Compl. ¶ 75).

- Stonelake voiced concerns at Horizon team leadership meetings about product safety that Stonelake's female colleague, "KA," had shared with Stonelake. (*Id.* ¶¶ 96-98, 100-02). In response, Stonelake's male colleague, Jeff Lin, made fun of the concerns and told Stonelake to make KA "shut up," which Lin positioned as an opportunity for Stonelake to prove to the otherwise all-male leadership team that she was "as good as they say." (*Id.* ¶¶ 101-02).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 9

- The launch of the product that Stonelake raised safety concerns about was eventually paused over those same concerns. (*Id.* ¶ 109). However, a male colleague received credit for the initiative. (*Id.*).

- When Stonelake served as a bias interrupter at performance review meetings, several male supervisors assigned their male reports outstanding ratings without regard for the relevant performance review standards. (*Id.* ¶ 117). When Stonelake raised concerns about this behavior with a member of HR, Stonelake was met with an eye roll and told not to "dwell there." (*Id.* ¶¶ 118, 121).

- In 2023, Stonelake was told that she would not be promoted because documenting her accomplishments would expose the failures of male leaders. (*Id.* ¶ 126).

*Id.* Stonelake has sufficiently alleged acts contributing to her sexual harassment claim that occurred within the statute of limitations.

### 2. The Acts that Occurred During Stonelake's Tenure at Meta's Palo Alto Office Are Too Disconnected from the Timely Acts to Be Considered Part of a Single Harassment Claim

Turning to the remaining *Morgan* requirements, Meta argues that Stonelake's allegations are too disconnected from each other to be considered part of a single harassment claim because those allegations are attributable to different people in different locations at different times. Def.'s Mot. at 3-5. Stonelake responds that she has sufficiently alleged multiple acts within the limitations period that are a natural extension of continuing discriminatory conduct that she experienced in the years preceding the limitations period. Pl.'s Resp. at 13-14.

The Court divides Stonelake's remaining allegations—those concerning acts falling outside the limitations period—into two parts: (1) those involving acts that occurred during Stonelake's tenure at Meta's Palo Alto office, and (2) those involving acts that occurred during Stonelake's tenure at Meta's Seattle office.

### a. Palo Alto Allegations

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 10

Stonelake's allegations of harassing behavior at Meta's Palo Alto office are extreme, and if proven, would be shocking. However, these allegations fail under the second and third *Morgan* requirements. Notably, these allegations concern events from roughly ten to fifteen years before the within-statute allegations. *Compare id.* ¶¶ 5-21 (describing events from Stonelake's tenure at the Meta Palo Alto office), *with id.* ¶¶ 23-131 (describing events from Stonelake's tenure at Meta's Seattle office). Additionally, the conduct that Stonelake complains of after her transfer from Palo Alto involves entirely different actors and conduct that largely occurred in a different state. The Palo Alto allegations are too disconnected from the within-statute allegations to be considered part of a single sexual harassment claim. Furthermore, Stonelake's transfer to Seattle broke the causal nexus between the within-statute events and the out-of-time events. *Cf. Costanzo v. United States Postal Serv.*, 00 Civ. 5044, 2003 WL 1701998, at *11 (S.D.N.Y. Mar. 31, 2003) (concluding that employee transferred to a new team with a new direct supervisor could not recover for alleged acts contributing to harassment claim from before transfer). Stonelake's harassment claim is dismissed to the extent that it is based on conduct that occurred during her tenure at Meta's Palo Alto office.

### b. Seattle Allegations

Regarding Stonelake's tenure at Meta's Seattle office, relevant allegations include that:

- Stonelake's male supervisor, "ES," told Stonelake a story about a woman "who was the smartest, hardest working person at the agency, but she was old, and a mom, and no one liked her because every time she opened her mouth she was right and no one wants to work with a woman who is always right." Compl. ¶ 31.

- Stonelake's male colleague told her it was not fair to others that she was so smart and that she would be better liked if she acted less smart. *Id.* ¶ 34.

- Stonelake reported the comment to her manager and HR, but her manager thought the comment was funny and HR did nothing. *Id.* ¶ 35.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- ES made Stonelake write her own directorship promotion case but did not make her male colleague do the same. *Id.* ¶ 37.

- ES told Stonelake that her male colleague needed to "land the plane" to get promoted, while Stonelake needed to "lap" her male colleague and "land the plane first." *Id.* ¶ 38.

- While on a business trip during a career milestone, a male executive asked Stonelake what her husband would say if she said she "fucked" the executive. *Id.* ¶ 40.

- ES fell asleep during a large meeting led by Stonelake, then took credit for the results while Stonelake smoothed over the consequences of his behavior. *Id.* ¶ 46.

It is true that these allegations also concern various types of conduct by various individuals. However, construing the facts in Stonelake's favor, the out-of-time acts are not too disconnected from the within-statute acts to be considered part of a single harassment claim.

### C. Stonelake's Has Sufficiently Stated a Claim for Retaliation Under the Washington Law Against Discrimination

Stonelake argues that Meta retaliated against her by (1) excluding her from Horizon leadership team meetings after she opposed and reported discrimination by other team members; and (2) denying her a promotion in 2023, after she called out bias as part of her role as a bias interrupter. Pl.'s Resp. at 20-23. Meta responds that Stonelake's WLAD retaliation claim should be dismissed as untimely and because she has not alleged sufficient facts to state a claim. Def.'s Mot. at 7-12.

#### 1. The Retaliation Claim is Timely

Meta argues that Stonelake's WLAD retaliation claim is time-barred because she does not identify any protected activity that occurred within the limitations period. *Id.* at 8-9. However, it is unclear when the events that Stonelake complains of concerning the Horizon leadership team

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 12

meetings occurred. Additionally, Stonelake alleges that she was asked to serve as a bias interrupter in January 2023, placing any retaliation claim stemming from that role within the statute of limitations. Compl. ¶ 112. The Court declines to dismiss Stonelake's WLAD retaliation claim as untimely.

### 2. The Allegations Regarding the Horizon Leadership Team Meetings and Stonelake's Role as a Bias Interrupter Are Sufficient to State a Claim for Retaliation

WLAD's retaliation provision, RCW § 49.60.210(1), "extends broad protections to 'any person' engaging in statutorily protected activity from retaliation." *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 742 (2014). To establish a prima facie case of retaliation under WLAD, a plaintiff must show: (1) she engaged in a statutorily protected activity; (2) defendant took an adverse employment action; and (3) retaliation was a substantial factor behind the adverse employment action, i.e., causation. *Sims v. Lakeside Sch.*, 2008 WL 2811164, at *3 (W.D. Wash. July 16, 2008). "'An employee who opposes employment practices reasonably believed to be discriminatory is protected . . . whether or not the practice is actually discriminatory.'" *Graves v. Dep't of Game*, 76 Wn. App. 705, 712 (1994) (quoting *Gifford v. Atchison, Topeka & Santa Fe Ry.*, 685 F.2d 1149, 1157 (9th Cir. 1982). Stonelake's allegations regarding the Horizon leadership team meetings and 2023 promotion denial are sufficient at this stage to state a claim for retaliation pursuant to WLAD.

### a. Stonelake Has Adequately Alleged that She Engaged in Statutorily Protected Activities

Regarding her experience with the Horizon leadership team, Stonelake alleges that, while acting as an interim team leader:

- She raised safety concerns about a product rollout and the fact that another female leader's similar concerns were being ignored. Compl. ¶¶ 96-100. In

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

response, the otherwise all-male Horizon leadership team rejected Stonelake's concerns and told her to "shut [the other female leader] up." *Id.* ¶¶ 101-02.

- Stonelake continued raising these same concerns in the leadership team meetings. *Id.* ¶¶ 103-05.

- Stonelake also complained to HR about her experiences at the leadership team meetings, after which she was informed that interim leaders would no longer be permitted to attend the leadership meetings. *Id.* ¶¶ 105-06.

Considering these allegations a reasonable employee in Stonelake's position could believe that her colleagues' comments and behavior at the Horizon leadership team meetings amounted to sex-based discrimination prohibited by WLAD. Additionally, Stonelake's alleged act of reporting her experience at the Horizon leadership team meetings to HR is sufficient at this stage to establish that she engaged in a protected activity pursuant to WLAD's participation clause. *See Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1125-26 (E.D. Wash. 2013) (describing plaintiff's internal complaint of harassment as "protected conduct" under WLAD).

As to Stonelake's role as a bias interrupter, she alleges that she engaged in protected activity when she called out the fact that male colleagues were highly rated at performance review meetings based on subjective criteria, and a male Asian colleague appeared to be held to a higher standard during those same meetings. Pl.'s Resp. at 20; Compl. ¶¶ 117-19, 121-22. A reasonable employee in Stonelake's position could believe that the actions that she called out at performance reviews amounted to unlawful racial and sexual discrimination. The allegations are sufficient at this stage to establish that Stonelake may have engaged in protected activity by opposing discrimination based on race and sex while serving as a bias interrupter.

### b.  Stonelake Has Adequately Alleged Adverse Employment Actions

Stonelake asserts that she experienced adverse employment actions in the form of (1) exclusion from weekly Horizon leadership team meetings, and (2) being denied a promotion in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

2023. Pl.'s Resp. at 21-22. Meta argues that these acts were not adverse employment actions because they did not alter the terms and conditions of Stonelake's employment. Def.'s Mot. at 10.

An adverse employment action involves a change in employment that is more than an inconvenience or alteration of one's job responsibilities. *Alonso*, 178 Wn. App. at 746. The employee must show that "a reasonable employee would have found the challenged action materially adverse, meaning it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Boyd v. Dep't of Soc. and Health Servs.*, 187 Wn. App. 1, 13 (2015) (quoting *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006)). "[W]hether a particular action would be viewed as adverse by a reasonable employee is a question of fact appropriate for a jury." *Id.* at 13-14.

At this stage, the allegations regarding Stonelake's 2023 failure to promote are sufficient to satisfy the adverse employment action element. *See* Compl. ¶¶ 110, 112, 125-26; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, [or] failing to promote . . . ."). As to Stonelake's removal from the Horizon team leadership meetings, given the fact-specific nature of this inquiry, her allegations regarding her removal from those meetings are also sufficient at this stage. *See* Compl. ¶¶ 100-07; *Boyd*, 187 Wn. App. at 13-14.

### c.  Stonelake Has Adequately Alleged Causation

Stonelake responds that the temporal proximity of the protected activities and adverse employment actions that she alleges is sufficient at this stage to establish causation. Pl.'s Resp. at 22. To prove causation, a plaintiff must show that retaliation was a "substantial factor" motivating the employer's adverse action. *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 412 (2018). "[R]etaliation need not be the main reason behind the [adverse action] but instead need only

be the reason that 'tips the scales' toward [it]." *Currier*, 182 Wn. App. at 746 (quoting *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 72 (1991)).

A plaintiff may satisfy the causation element by showing that "(1) the employee took a protected action, (2) the employer had knowledge of the action, and (3) the employee was subjected to an adverse employment action." *Cornwell*, 192 Wn.2d at 413 (emphasis omitted); *see also Graves*, 76 Wn. App. at 712. For the reasons already discussed, Stonelake's allegations regarding the Horizon leadership team meetings and Stonelake's role as a bias interrupter are sufficient to establish the first and third requirements: that the employee took a protected action and experienced an adverse employment action. As to the remaining element—Meta's knowledge of the protected action—Stonelake alleges that she (1) discussed her exclusion from the Horizon leadership meetings with HR, and (2) was informed that she would not be promoted by her direct supervisor. Compl. ¶¶ 105, 125-26. And regarding Stonelake's role as a bias interrupter, Stonelake alleges that a member of HR was present at the performance review meetings where Stonelake raised concerns about discriminatory conduct. *Id.* ¶¶ 118, 121. These allegations are sufficient to show that Meta had knowledge of Stonelake's alleged protected activities. Stonelake has adequately established the causation element.

### D. Stonelake Fails to State a Claim for Wrongful Discharge in Violation of Public Policy[2] Because She Has Not Shown that She Was Constructively Discharged

---

[2] Stonelake's Complaint refers to this claim as "Retaliation in Violation of Public Policy[]" Under Common Law," while her brief refers to this claim as "Wrongful Termination in Violation of Public Policy." *See* Compl. at 30; Pl.'s Resp. at 24. Only the latter is an available cause of action under Washington law. Accordingly, the Court presumes that wrongful termination in violation of public policy (also referred to as wrongful discharge in violation of public policy) is the claim that Stonelake intends to assert.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Stonelake asserts a claim for wrongful discharge in violation of public policy based on the concerns she raised regarding (1) safety issues with the Horizon platform, and (2) Horizon leaders' decision to divert resources that were allocated to the court-mandated Data Privacy Assessment for other projects. Pl.'s Resp. at 24-26. Meta argues that Stonelake's wrongful discharge in violation of public policy claim fails because her allegations do not amount to discharge. Def.'s Mot. at 13. Stonelake responds that she has sufficiently alleged that she was constructively discharged as a result of engaging in protected whistleblowing activities. Pl.'s Resp. at 25-26.

Claims of wrongful discharge in violation of public policy may arise from scenarios where "employees are fired for refusing to commit an illegal act" and "where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing." *Dicomes v. State*, 113 Wn.2d 612, 618 (1989). The tort of wrongful discharge in violation of public policy applies only when an employee has been discharged. *Roberts v. Dudley*, 140 Wn.2d 58, 76 (2000). The discharge may be actual or constructive. *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 238 (2001). Constructive discharge occurs where an employer forces an employee to quit by making that employee's work conditions intolerable. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 631 (1985).

Stonelake has not shown that she was constructively discharged. She alleges that, after she went on medical leave, her position was eliminated. Compl. ¶ 130. However, while on leave, she was also offered another position with Meta, which she accepted. *Id.* These allegations show that Stonelake was still an employee of Meta prior to her actual discharge when she was laid off. Therefore, her constructive discharge argument must fail. *See Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 180 (2005) ("[W]here the employee continues to receive employment benefits and is still considered to be an active employee, or where his or her ability to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

return to work is protected in some other way, that employee has not been constructively discharged."), *overruled on other grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d 268 (2015); *McMinimee v. Yakima Sch. Dist. No. 7*, No. 1:18-CV-3073, 2021 WL 298199, at *2 (E.D. Wash. Jan. 5, 2021). Stonelake has not shown that she was constructively discharged. Her common law retaliation claim is dismissed.

### E.  Stonelake's Fails to State a Claim for Retaliation Under the Silenced No More Act

Stonelake asserts a retaliation claim pursuant to the SNMA based on her "complaints and opposition to safety and public policy issues, regulatory violations, and discrimination and harassment related to Horizon" and her "complaint and opposition to discrimination and bias as a bias interrupter." Pl.'s Resp. at 23-24.

Enacted in 2022, the SNMA restricts the scope of nondisclosure and nondisparagement agreements between employers and employees and protects employees against certain forms of workplace-based discrimination, harassment, and retaliation. RCW § 49.44.211. Subsection (3) of the statute provides that

> [i]t is a violation of this section for an employer to discharge or otherwise discriminate or retaliate against an employee for disclosing or discussing conduct that the employee reasonably believed to be illegal harassment, illegal discrimination, illegal retaliation, wage and hour violations, or sexual assault, that is recognized as illegal under state, federal, or common law, or that is recognized as against a clear mandate of public policy, occurring in the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises.

*Id.* § 49.44.211(3).

Meta argues that Stonelake fails to state a claim pursuant to the SNMA because she does not allege the existence of any nondisclosure or nondisparagement provisions that would trigger the SNMA's protections. Def.'s Mot. at 14. Stonelake rejects Meta's interpretation of the SNMA,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 18

1    contending that "nothing in the law's text imports this drastic limiting requirement into the

2    retaliation provision in subsection (3), and Meta's atextual interpretation would render

3    subsection (4), which prohibits an employer's request that an employee enter into any agreement

4    prohibited by the statute, a nullity. Pl.'s Resp. at 23.

5          The Court rejects Stonelake's interpretation of subsection (3) as overbroad. It is true that

6    the Official Notes to the SNMA broadly reference the "strong public policy in favor of the

7    disclosure of illegal discrimination, illegal harassment, illegal retaliation, wage and hour violations,

8    and sexual assault . . . . RCW § 49.44.211 ("Official Notes"). However, the Notes conclude that

9    "[i]t is the intent of the legislature to prohibit nondisclosure and nondisparagement provisions in

10   agreements, which defeat the strong public policy in favor of disclosure." *Id.*; *see also Kane v.*

11   *Mednax Services, Inc.*, No. 2:22-CV-0159-TOR, 2022 WL 16748784, at *6 (E.D. Wash. Nov. 7,

12   2022) ("A review of Washington caselaw and recent amendments to Washington's labor statutes

13   reveals a clear intent to avoid confidentiality provisions in employment agreements as they relate

14   to claims arising from discrimination, harassment, retaliation, sexual assault, and wage and hour

15   violations."). It thus appears that the Legislature intended subsection (3) to prohibit discrimination

16   and retaliation in relation to nondisclosure and nondisparagement agreements, in other words, to

17   protect individuals who have entered into nondisclosure or nondisparagement agreements or are

18   pressured by employers to enter into such agreements. Stonelake's SNMA claim has no such nexus

19   to a nondisclosure or nondisparagement agreement. The SNMA claim is dismissed.

20      **F.  Stonelake's Request for Leave to Amend is Denied**

21         In the event that this Court grants any part of Meta's Motion to Dismiss, Stonelake requests

22   leave to amend the Complaint. Pl.'s Resp. at 26. Stonelake asserts that she experienced additional

23   acts of harassment, discrimination, and sex-based double standards throughout her time at Meta

24   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

25   

that were not included in the initial Complaint, with the goal of keeping the Complaint a "short and plain statement." *Id.* Meta counters that Stonelake's request for leave to amend fails to identify any allegations that she could add to her Complaint to cure the deficiencies raised by Meta's Motion to Dismiss. Def.'s Reply at 10, Dkt. No. 19.

When dismissing a case for failure to state a claim, the "district court 'should grant leave to amend . . . unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). A court may freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit recognizes that the purpose of this provision of Rule 15(a) is "to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Where amendment of the complaint would be futile, the court need not permit leave to amend. *See Nunes v. Ashcroft*, 375 F.3d 810, 813 (9th Cir. 2004). The grounds on which the Court partially grants Meta's Motion to Dismiss cannot be overcome by additional allegations. Amendment in this case would be futile. Stonelake's request for leave to amend is denied.

## V.    CONCLUSION

For the foregoing reasons:

1. Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 11) is GRANTED insofar as:

   a. Plaintiff's sexual harassment claim is dismissed, in part, to the extent that it relies on conduct that took place during Plaintiff's tenure at Meta's Palo Alto office.

   b. Plaintiff's wrongful discharge in violation of public policy claim is dismissed.

   c. Plaintiff's Silenced No More Act retaliation claim is dismissed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

2.   Defendant's Motion to Dismiss is denied in all other respects.

3.   Plaintiff's request for leave to amend is DENIED.

DATED this 21st day of August 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

- 21